

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| JANET HURST, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD76534 |
| | ) | |
| KANSAS CITY, MISSOURI SCHOOL DISTRICT, | ) | Opinion filed:  April 29, 2014 |
| | ) | |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**The Honorable Sandra Midkiff, Judge**

Before Division One:  Joseph M. Ellis, Presiding, Judge,
Karen King Mitchell, Judge and Anthony Rex Gabbert, Judge

Appellant Kansas City, Missouri School District ("the District") appeals from a judgment entered by the Circuit Court of Jackson County in favor of Respondent Janet Hurst in the amount of $247,083.78 in actual damages and $200,000.00 in punitive damages.  The award resulted from a suit filed by Respondent alleging that the District discriminated against her because of her age when it eliminated her position as a school psychological examiner and failed to hire her for the new reconstituted position of educational diagnostician.  For the following reasons, the judgment is affirmed.

The evidence viewed in the light most favorable to the verdict reflects the following. In 2005, Respondent began working for the District as a school psychological examiner ("SPE") in the Exceptional Education Department. SPEs administered tests to students to evaluate whether the students qualified for special educational assistance. After administering the tests, SPEs would write reports explaining their findings. SPEs would then re-evaluate the students that qualified for assistance every three years.

During the 2009-2010 school year, the Exceptional Education Department Director, Dr. Christine Hernandez, the Lead School Psychologist,[1] Joanne McNellis, and the Exception Educational Compliance and Operations Officer, Waukita Williams, decided changes needed to be made to the SPE position. In April of 2010, the District notified all SPEs, including Respondent, that it was reconstituting the SPE position for the 2010-2011 school year. The new, reconstituted position would be called an educational diagnostician ("ED") and would purportedly involve a counseling component not previously required of the SPEs. All former SPEs had the opportunity to interview for the new ED position but were not guaranteed a position. At a meeting regarding the new position, the District told the SPEs that the hiring decisions would be based on the interview as well as their previous work performance. The SPEs were also informed there would be twelve ED positions available.

A four-person committee interviewed the applicants for the ED position. The four-person committee consisted of Dr. Hernandez, McNellis, Williams, and a

---

[1] As Lead School Psychologist, McNellis supervised all the SPEs.

representative from the human resources department. Prior to the interviews, the interviewing committee members drafted twelve questions with model answers. During the interviews, the committee members asked each applicant the predetermined questions and then individually scored the applicant's answer on a scale of 0 to 3. At the conclusion of the interviews, the applicants' scores were totaled and converted into percentages. Dr. Hernandez originally stated that applicants had to score 80% or higher on the interview in order to qualify for an ED position. Dr. Hernandez later lowered the required minimum score to 60%. The District did not inform the applicants that they would be required to score a certain percentage on the interview to obtain an ED position.

At the time of the interviews, Respondent was sixty-one (61) years old. She interviewed for the ED position but received a score of 42%. Dr. Hernandez notified her in June 2010 that she would not be hired as an ED. In July, Respondent received a letter informing her that although she "met the minimum qualifications for the [ED] position," the District had "selected other candidates whom [it] believe[d] more closely match[ed] the requirements of the position and needs of the students." The letter further informed Respondent that if the District found that she was qualified for a position in the future, she would be contacted.

In August, the District notified Respondent that it was assigning her to teach a fifth grade class at a "turn-around school."[2] Respondent received the notification two

---

[2] Testimony at trial described a turn-around school as a school that "was having problems" such that the District developed "extra plans" to improve it and other similarly situated schools.

3

weeks before the school year was scheduled to begin. Respondent was concerned about her ability to teach the class because she had not taught in the classroom for thirty-seven years. Ultimately, she decided that she could not do an adequate job teaching the class and she retired from the District.

In August 2011, Respondent filed a petition alleging age discrimination in violation of the Missouri Human Rights Act ("MHRA"). In particular, Respondent alleged that age was a contributing factor in the District's decision to eliminate her SPE position and in its failure to hire her for the ED position.

In 2013, the case proceeded to trial. At trial, the District's 2009 performance assessment of Respondent was offered into evidence. Respondent received marks of exceeds expectations or meets expectations in all categories assessed. The assessment also recommended Respondent for rehire for the 2010-2011 school year. Further testimony indicated that Respondent wrote very detailed reports and was considered one of the top SPEs in the District by her co-workers.

Evidence regarding the interviewing process was also introduced at trial. Such evidence included the scores given and the notes taken by each interviewing committee member during the applicants' interviews. The notes reflected that Respondent received lower scores on some questions despite her giving the same or better answers than younger applicants. The evidence further established that, as a result of the interview, the four eldest applicants, one of which was Respondent, were not hired while the four youngest applicants were offered ED positions.

4

Respondent further adduced evidence that the ED position was substantially the same as the SPE position. Michael Champan and Lori Jackson-Thurman, two former SPEs that were hired for the ED position, testified that the ED position differed from the SPE position only in minor, procedural aspects. They further testified that the District never implemented the counseling component and that the District never filled all the ED positions for the 2010-2011 school year. Jackson-Thurman offered additional testimony that McNellis told her that McNellis would "kill her" if she helped an older SPE prepare for the interview. Respondent likewise testified that, early in the 2009-2010 school year, McNellis instructed her not to help a new SPE, who was then sixty-one years old, learn how to score certain tests.

Thomas Levin, a former principal in the District, also testified on behalf of Respondent. The District objected to Levin testifying at trial. The trial court overruled the objection after finding that there was sufficient commonality between Levin's and Respondent's experiences. Levin testified that he had to re-interview for his position for the 2010-2011 school year due to the District's downsizing. He further explained that Dr. Hernandez performed his final performance assessment and that he had an age discrimination action currently pending against the District.

Also during Levin's testimony, an early draft of the District's Transformation Plan ("the Draft") was introduced into evidence as Exhibit 156. Levin testified that he downloaded the Draft from the District's website after the District advised him to become familiar with it. The District objected to the Draft's admission on foundational grounds. The District further objected to the Draft on the basis that community members were

permitted to contribute to the Draft. The District argued that because of the community's participation, the language in the Draft about which Levin was going to testify could not be attributed to the District. The trial court overruled the objections, and a stipulation[3] was read to the jury explaining that District employees and community members contributed to the Draft, and the Draft was not the final plan approved and adopted by the District.

Levin then testified that page 66 of the Draft provided: "In times of strong change, it is often senior staff who hold onto the old culture of an organization. The District encourages the retirement of those who know that they may not be able to keep up with the changes necessary to raise student achievement." On cross-examination, Levin testified that he knew that members of the community participated in the making of the Draft and that he was unsure whether the District or a member of the community drafted the language that appeared on page 66.

As to damages, Respondent testified that because she was not offered the ED position, she lost $247,083.78 in wages and benefits. However, she did explain that she had been employed since she retired from the District and had earned $106,134.64. She further testified that she was very upset and embarrassed when she was not hired as an ED, especially in light of the fact that she was in the process of purchasing a new home.

---

[3] The parties agreed to the stipulation, but the District did so on the basis that it was "not waiving [its] objection" to the Draft's admission into evidence.

Ultimately, the District's motions for directed verdict were denied, and the case was submitted to the jury. The jury found in favor of Respondent and awarded her $247,083.78 in actual damages and $200,000.00 in punitive damages. Post-trial, the District filed a motion for judgment notwithstanding the verdict ("JNOV") or, in the alternative, a motion for new trial. The District also filed a motion for remittitur alleging the damages award was excessive. Respondent opposed the District's motions and filed her own post-trial motion for equitable relief requesting that she be reinstated to an ED position with the District. On June 3, 2013, the trial court denied the District's motion for JNOV and motion for remittitur, but granted Respondent's request for reinstatement. The District now raises eight points on appeal.

In its first point, the District contends that the trial court erroneously instructed the jury. In particular, the District avers that Instruction No. 6 mislead and confused the jury because it was an improper alteration of MAI 38.01. The District further asserts that the trial court erred in rejecting its proposed instructions, which it contends were consistent with MAI 38.01. "Whether a jury was instructed properly is a question of law that this Court reviews *de novo.*" **Doe 1631 v. Quest Diagnostics, Inc.**, 395 S.W.3d 8, 13 (Mo. banc 2013). "We will reverse only if the offending instruction misdirected, misled, or confused the jury, resulting in prejudicial error." **Rinehart v. Shelter Gen. Ins. Co.**, 261 S.W.3d 583, 593 (Mo. App. W.D. 2008) (internal quotation omitted). "We view the evidence most favorably to the instruction and disregard contrary evidence." **Id.** (internal quotation omitted).

7

The parties agree that MAI 38.01 is the proper instruction in this case. MAI 38.01 provides:

> Your verdict must be for plaintiff if you believe:
>
> First, defendant *(here insert the alleged discriminatory act, such as "failed to hire", "discharged" or other act within the scope of § 213.055 RSMo)* plaintiff, and
>
> Second, *(here insert one or more of the protected classifications supported by the evidence such as race, color, religion, national origin, sex, ancestry, age, or disability)* was a contributing factor in such *(here, repeat alleged discriminatory act, such as "failure to hire", "discharge", etc.)*, and
>
> Third, as a direct result of such conduct, plaintiff sustained damage.

Respondent offered the following MAI 38.01 instruction as modified by MAI 19.01:

> Your verdict must be for Plaintiff Janet Hurst if you believe:
>
> First, Defendant either:
>
>> Eliminated Plaintiff's position as a School Psychological Examiner, or
>>
>> Failed to hire Plaintiff as an Educational Diagnostician, and
>
> Second, Plaintiff's age was a contributing factor in Defendant's conduct in any one or more of the respects submitted in paragraph First, and
>
> Third, such conduct **directly caused or directly contributed to cause** damage to Plaintiff.

(Emphasis added).

The District asserts that the trial court erred in modifying paragraph Third with the MAI 19.01 "directly caused or directly contributed to cause" language because MAI 19.01 is intended strictly for comparative negligence cases. However, Missouri cases

8

addressing the application of MAI 19.01 have rejected such argument. *See **Mathes v. Sher Express, L.L.C.***, 200 S.W.3d 97, 109 (Mo. App. W.D. 2006) (explaining that MAI 19.01 is not limited to negligence cases); ***Eagleburger v. Emerson Elec. Co.***, 794 S.W.2d 210, 224 (Mo. App. S.D. 1990) (same). Rather, as this Court has noted on several occasions, "[a] requesting party is . . . entitled to use the MAI 19.01 modification language in cases in which there are multiple causes of damage" even if the case does "not involve another party or tortfeasor." ***Wright v. Barr***, 62 S.W.3d 509, 529 (Mo. App. W.D. 2001) (internal quotation omitted); *see also **Rinehart***, 261 S.W.3d at 593; ***Mathes***, 200 S.W.3d at 109. Therefore, the District's contention that the instruction was erroneous because MAI 19.01 is intended solely for comparative negligence cases is without merit.

In its reply brief, the District acknowledges that MAI 19.01 has been applied outside of the comparative negligence context. Nevertheless, the District continues to assert that the MAI 19.01 modification cannot be used in MHRA discrimination cases. While the District correctly asserts that no case law exists in which the MAI 19.01 modification has been used in an MHRA case, that does not exclude the possibility that MAI 19.01 could properly be applied in such cases. As previously explained, MAI 19.01 is intended for situations in which "there are multiple causes of damage." ***Wright***, 62 S.W.3d at 529 (internal quotation omitted). Case law discussing the applicability of MAI 19.01 focuses on that intended use and does not suggest MAI 19.01's application is limited to specific causes of action. Therefore, we cannot find instructional error in this

9

case based solely upon the fact that the trial court applied the MAI 19.01 modification in an MHRA case.

Moreover, even if the MAI 19.01 modification proved inapplicable to this case,[4] the District has failed to establish how it was prejudiced by the instruction. The District contends only that the modified instruction "created confusion in that it misstated the law regarding the elements required for Respondent to recover under the Missouri Human Rights Act." Such a conclusory statement, without further explanation, falls short of establishing the requisite prejudice for instructional error. Accordingly, we cannot say the trial court's instructions in this case constituted prejudicial or reversible error.[5] Point denied.

---

[4] Respondent contends that she was entitled to the MAI 19.01 modification because the case involved multiple causes of damage. Respondent bases her contention on the fact that she requested actual damages in the form of lost wages and benefits. And while she argued that her lost wages and benefits resulted from the District's elimination of the SPE position and its failure to hire her for the ED position, the District argued that any damages Respondent sustained resulted from her decision not to accept the fifth-grade teaching position. Thus, Respondent avers that multiple causes of damage were argued before the jury, requiring the MAI 19.01 modification be used. However, any argument by the District regarding Respondent's decision not to accept the teaching position goes toward its defense that Respondent failed to mitigate her damages. Mitigation of damages is a principle that occurs "*after* breach and injury have been inflicted." *Burrell ex rel. Schatz v. O'Reilly Auto., Inc.*, 175 S.W.3d 642, 651 n.10 (Mo. App. S.D. 2005) (emphasis in original). Therefore, Respondent's alleged failure to mitigate damages cannot also constitute a cause of damage. Nevertheless, such issue need not be reached due to the District's failure to establish prejudice.

[5] The District also contends that the trial court erred by refusing to submit the two instructions it proposed in place of Instruction No. 6. During the instruction conference, the District argued that two instructions were necessary in place of Instruction No. 6 because an age discrimination claim for failure to hire requires the plaintiff to prove a fourth element – that the applicant was qualified for the position. The District asserted that this fourth element was not required in Respondent's claim regarding the elimination of her SPE position thereby necessitating separate instructions for each of the alleged discriminatory acts. On appeal, the District contends its proposed instructions were consistent with MAI 38.01, and, thus, the trial court should have submitted its instructions to the jury. However, MAI 38.01 specifically indicates that it applies to MHRA claims regarding failure to hire and it does not include a paragraph requiring the jury to find that the plaintiff was qualified for the position. To that extent, the District's proposed instructions are inconsistent with MAI 38.01; therefore, the trial court did not err in refusing to submit them to the jury.

10

In its second point, the District avers that the trial court erred in denying its motion for directed verdict and motion for JNOV because the District was entitled to judgment as a matter of law in that Respondent failed to make a submissible case that she was damaged as a direct result of the District's decision to eliminate the SPE position or its failure to hire her for the ED position. "The standards of review for denial of a motion for directed verdict and denial of a motion for judgment notwithstanding the verdict are essentially the same." *DeWalt v. Davidson Serv./Air, Inc.*, 398 S.W.3d 491, 498 (Mo. App. E.D. 2013). "To defeat either motion, the plaintiff must make a submissible case by offering substantial evidence to support every fact essential to a finding of liability." *Id.* We view "the evidence in the light most favorable to the jury's verdict, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that verdict." *Sanders v. Ahmed*, 364 S.W.3d 195, 208 (Mo. banc 2012). This Court will reverse a jury verdict only where we find a complete absence of probative facts to support the jury's conclusion. *Id.*

The District avers that Respondent failed to proffer substantial evidence that she was damaged as a direct result of the District's decision to eliminate her SPE position or its failure to hire her for the ED position. In doing so, the District emphasizes that, absent Respondent's decision not to accept the fifth-grade teaching position, she would have continued to enjoy the same wages and benefits as the ED position. The District's

11

argument, however, pertains to its failure-to-mitigate defense and overlooks the substantial evidence Respondent offered with respect to the damages she incurred.

The District's contentions suggest that because Respondent failed to mitigate her damages, she failed to make a submissible case as to damages. Such a proposition cannot stand. "Mitigation of damages is not a complete bar to recovery, but rather affects the measure of damages that is recoverable." *Hertz Corp. v. RAKS Hospitality, Inc.*, 196 S.W.3d 536, 548 (Mo. App. E.D. 2006). Therefore, while the District's argument might affect the measure of damages Respondent can recover, it does not affect the submissibility of this case with respect to damages.

Moreover, the record reflects that Respondent provided substantial evidence on the element of damages. At trial, Respondent testified that, as a result of the District eliminating her SPE position and its failure to hire her as an ED, she incurred $247,083.78 in lost wages and benefits. Respondent, therefore, established that she suffered economic damages as a result of the District's failure to hire her for the ED position. Additionally, Respondent pleaded that she incurred damages for emotional distress, humiliation, and anxiety.[6] Respondent testified that she was embarrassed and upset when the District failed to hire her as an ED. She further explained that not being hired caused additional anxiety because, at the time, she was in the process of purchasing a new home. Thus, when viewed in the light most favorable to the verdict, Respondent made a submissible case with respect to damages. Point denied.

---

[6] Such damages are recoverable under the MHRA. *See* *State ex rel. Sir v. Gateway Taxi Mgmt. Co.*, 400 S.W.3d 478, 491 (Mo. App. E.D. 2013) (explaining that "[a]ctual damages include damages for emotional distress, humiliation, and deprivation of civil rights" under the MHRA).

In its third point, the District contends that the trial court erred in denying its motion for directed verdict and JNOV or, in the alternative, its motion for remittitur, because the District was entitled to judgment as a matter of law in that the $247,083.78 jury verdict was not supported by substantial evidence because Respondent failed to mitigate her damages. However, the "[f]ailure to mitigate damages is an affirmative defense," *Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191, 201 (Mo. App. W.D. 2013), and "[d]efendants carry the burden of proof on all affirmative defenses." *TA Realty Assocs. Fund V, L.P. v. NCNB 1500, Inc.*, 144 S.W.3d 343, 347 (Mo. App. E.D. 2004). A "trial court generally may not direct a verdict in favor of the party who carries the burden of proof." *Woodglen Estates Ass'n v. Dulaney*, 359 S.W.3d 508, 512 (Mo. App. W.D. 2012) (internal quotation omitted). And although "there are exceptions to the rule where the opponent admits the truth of the basic facts upon which the claim of the proponent rests or the proof of the facts is altogether of a documentary nature," *id.* (internal quotation omitted), a directed verdict generally "is not given in favor of the party having the burden of proof no matter how overwhelming that party's evidence may be or how minuscule the other party's evidence may be." *Rouse v. Cuvelier*, 363 S.W.3d 406, 414 (Mo. App. W.D. 2012) (internal quotation omitted).

Here, the District's failure-to-mitigate defense derives from the fact that Respondent declined the teaching position in which she would have received the same pay and benefits as an ED. While Respondent admits that she declined the teaching position, she does not concede that doing so constituted a failure to mitigate damages. Under the rule of mitigation of damages, "one damaged through alleged breach by

13

another of some legal duty or obligation [has to] make reasonable efforts to minimize the resulting damage." ***Cunningham v. Cunningham***, 805 S.W.2d 363, 365 (Mo. App. S.D. 1991) (internal quotation omitted). The defendant "must show that the injured party had an opportunity to mitigate and the reasonable prospective consequences." ***Business Men's Assur. Co. of Am. v. Graham***, 891 S.W.2d 438, 448 (Mo. App. W.D. 1994). The rule bars recovery only of "those damages which could have been avoided if reasonable precautions, reasonably known to the injured party, were exercised." ***Id.***

Although Respondent admitted to declining the teaching position, she vehemently argued to the jury that it would have been unreasonable for her to accept the teaching position. Respondent testified that she did not take the teaching position because she felt unprepared in that she had not taught in a classroom setting for over thirty-seven years, she was offered the position two weeks before school was scheduled to start, and the position would be at a "turn-around school." She further testified that, after reading a comprehensive memo provided by the school, she felt that she "could not do an adequate job teaching th[e] classroom" and "didn't feel [she] would be doing justice to the job, to the children, [or] to the parents." Respondent also emphasized that, if she accepted the position, she would be acting contrary to the District's policy of "[a]lways mak[ing] decisions based on the best interest of [the] students." In light of such evidence, Respondent did not admit the basic facts necessary to prove the District's defense that she failed to mitigate her damages. Thus, the District was not entitled to a directed verdict on its failure-to-mitigate defense.

14

The District alternatively argues that the trial court erred in denying its motion for remittitur. In particular, the District contends that the jury's award must be reduced by $106,134.64, the amount Respondent earned through other employment after she declined the teaching position. The District avers that the jury failed to consider Respondent's $106,134.64 in earnings when determining the damages award because the jury awarded Respondent $247,083.78, which was the exact amount of lost wages and benefits Respondent incurred from not being hired as an ED. The District further asserts that Respondent's request for non-economic damages cannot justify the $247,083.78 award.

"We review the trial court's denial of a motion for remittitur for an abuse of discretion." *Merseal v. Farm Bureau Town & Country Ins. Co. of Mo.*, 396 S.W.3d 467, 474 (Mo. App. E.D. 2013) (internal quotation omitted). This Court "will not disturb the trial court's decision on appeal absent an abuse of discretion so grossly excessive that it shocks the conscience and convinces us that both the trial judge and the jury have abused their discretion." *Id.* "We give deference to the trial court's decision whether to remit a verdict as the trial court is in a superior position to observe the testimony at trial." *Id.* at 475.

A trial court "may enter a remittitur order if, after reviewing the evidence in support of the jury's verdict, the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's

injuries and damages." **§ 537.068**.[7] "Each case must be examined on its own facts" as no precise formula exists in determining whether a verdict is excessive. *Evans v. FirstFleet, Inc.*, 345 S.W.3d 297, 303 (Mo. App. S.D. 2011). In evaluating the reasonableness of a verdict, courts typically consider the following factors: "(1) loss of present and future income; (2) medical expenses; (3) plaintiff's age; (4) the nature and extent of plaintiff's injuries; (5) economic considerations; (6) awards approved in comparable cases; and (7) the trial court's and jury's superior opportunity to evaluate plaintiff's injuries and other damage." *Knifong v. Caterpillar, Inc.*, 199 S.W.3d 922, 928 (Mo. App. W.D. 2006) *overruled on other grounds by* **Badahman v. Catering St. Louis**, 395 S.W.3d 29, 40 (Mo. banc 2013). Additionally, a "judgment may be based in part on 'certain intangibles' that do not lend themselves to precise calculation, such as past and future pain, suffering, effect on life-style, embarrassment, humiliation, and economic loss." *Id.* (internal quotation omitted). Such intangibles must also be taken into consideration when evaluating the reasonableness of the jury's verdict.

Respondent pleaded that she suffered damages in the form of lost wages and lost benefits as well as damages for emotional distress. At trial, Respondent testified that her economic damages totaled $247,083.78 in lost wages and benefits but that she had earned $106,134.64 through other employment since her retirement. Respondent further testified that she was very upset and embarrassed when she was not hired as an ED. She also explained that not being hired caused additional anxiety because she was in the process of purchasing a new home. And while such non-economic damages

---

[7] All statutory citations are to RSMo 2000 unless otherwise noted.

16

do not lend themselves well to precise calculation, Respondent requested, in closing argument, that the jury award between $280,000 and $420,000 in damages for the emotional distress and humiliation she suffered as a result of not being hired as an ED. Given such evidence, we cannot say that the jury's verdict was excessive. Thus, the trial court did not abuse its discretion in denying the District's motion for remittitur. Point denied.

In its fourth point, the District contends the trial court erroneously instructed the jury on the issue of punitive damages. Before we address this point, however, we will first address the District's fifth point, as our analysis of Point V is helpful in resolving the District's challenge to the punitive damages award.

In its fifth point, the District contends that the trial court erred in denying its motion for directed verdict and motion for JNOV because Respondent failed to make a submissible MHRA age discrimination claim. Again, in reviewing the denial of a motion for directed verdict or the denial of a motion for JNOV, we must determine whether the plaintiff made a submissible case. *DeWalt*, 398 S.W.3d at 498. In doing so, we view "the evidence in the light most favorable to the jury's verdict, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that verdict." *Sanders*, 364 S.W.3d at 208.

Respondent alleged that the District violated the MHRA by eliminating her SPE position or by failing to hire her for the ED position because of her age. Section 213.055 provides that an employer commits an unlawful employment practice by failing or refusing to hire, by discharging any individual, or by otherwise discriminating "against

17

any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability." **§ 213.055.1(1)**. A "plaintiff can prove discrimination by showing age or any protected characteristics was a *contributing* factor for the employment action regardless if other factors also exist." ***Stanley v. JerDen Foods, Inc.***, 263 S.W.3d 800, 803-04 (Mo. App. W.D. 2008) (internal quotation omitted). Thus, in order to make a submissible age discrimination claim in this case, Respondent had to present sufficient competent evidence from which a reasonable trier of fact could find: (1) that Respondent is in a protected age classification; (2) that the District eliminated Respondent's SPE position or failed to hire her as an ED; (3) that the District's consideration of Respondent's age contributed to its decision to eliminate her SPE position or its failure to hire her as an ED; and (4) that Respondent was thereby damaged. *See* **§ 213.055.1**; ***Thomas v. McKeever's Enters. Inc.***, 388 S.W.3d 206, 214 (Mo. App. W.D. 2012).

The District contends that Respondent failed to make a submissible case because Respondent did not establish that age was a contributing factor in its decision to eliminate the SPE position or its failure to hire her for the ED position. However, when viewed in the light most favorable to the verdict, there is sufficient competent evidence from which a reasonable juror could conclude age was a contributing factor.

The record reflects that twelve SPEs remained employed at the time of the interview, and there were twelve ED positions available for the 2010-2011 school year. Yet the District made all SPEs interview for the ED position. The District never

18

implemented the counseling component, which was the supposed purpose for reconstituting the SPE position, and the twelve ED positions were never filled for the 2010-2011 school year. Furthermore, despite the fact that the ED position was supposed to involve a counseling component, the only two SPEs with counseling experience, one of which was 63 years old, were not hired as EDs.

McNellis was involved in the decision to reconstitute the SPE position as well as developing the questions and model answers for the ED interview. McNellis was also a member of the interviewing committee. Testimony at trial reflected that early in the 2009-2010 school year, McNellis instructed Respondent not to help a new, older SPE learn how to score certain tests. Similarly, testimony from Jackson-Thurman indicated that McNellis stated that McNellis would "kill her" if she helped an older SPE prepare for the ED interview.

The District had informed applicants that it would consider their past performance in its hiring decisions. Nevertheless, the District ultimately based its hiring decisions solely on the scores from the applicants' interviews. As a result of the interview process, the four eldest SPEs were not hired for ED positions. The four youngest applicants, however, were offered ED positions.

From such evidence, a reasonable juror could have found that the District's proffered explanation for eliminating the SPE position was false and inferred discriminatory purpose on the District's behalf given McNellis's comments about helping older SPEs and the result of the interviewing process. *See Lomax v. DaimlerChrysler Corp.*, 243 S.W.3d 474, 483 (Mo. App. E.D. 2007) (explaining that, "in appropriate

19

circumstances[,] the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose") (internal quotation omitted). Thus, Respondent made a submissible age discrimination claim with respect to the District's elimination of her SPE position.

As to the District's failure to hire Respondent, evidence at trial established that Respondent had received a positive review in her last performance assessment. The assessment indicated that Respondent exceeded expectations or met expectations in all categories assessed. In fact, the assessment recommended she be rehired for the 2010-2011 school year. The District, however, did not consider the assessment when making its hiring decisions for the ED position. Instead, the District based its hiring decisions solely on Respondent's interview score despite the fact it had previously told the applicants it would consider their work performance history. Evidence from the interview process indicated that Respondent was scored lower on several questions than younger applicants even though she gave the same or better answers. In particular, McNellis scored Respondent lower than a younger applicant on a question in which Respondent gave the same answer as the younger applicant. And again, as a result of the interview, the four eldest SPEs, one of which was Respondent, were not hired as EDs. From such evidence, a reasonable juror could conclude that age was a contributing factor in the District's failure to hire Respondent as an ED. Accordingly, Respondent made a submissible age discrimination claim under the MHRA. Point denied.

In returning to the District's fourth point, it contends that the trial court erred in denying its motion for JNOV because Respondent failed to make a submissible case as to punitive damages. "Whether there is sufficient evidence for an award of punitive damages is a question of law." ***Howard v. City of Kansas City***, 332 S.W.3d 772, 788 (Mo. banc 2011) (internal quotation omitted). Thus, we must determine whether the evidence presented was sufficient, as a matter of law, to submit the claim for punitive damages. ***Id.*** (internal quotation omitted). "In doing so, we view the evidence and all reasonable inferences in the light most favorable to submissibility." ***Id.*** (internal quotation omitted). We evaluate punitive damages awards on a case-by-case basis. ***Holmes v. Kansas City Mo. Bd. of Police Comm'rs ex rel. Its Members***, 364 S.W.3d 615, 628 (Mo. App. W.D. 2012).

"To make a submissible case for punitive damages, there must be clear and convincing proof of a defendant's culpable mental state." ***J.M. Neil & Assocs., Inc. v. Alexander Robert William, Inc.***, 362 S.W.3d 21, 24 (Mo. App. W.D. 2012) (internal quotation omitted). "A plaintiff establishes a defendant's culpable mental state by showing either that the defendant committed an intentional wanton, willful, and outrageous act without justification or acted with reckless disregard for the plaintiff's rights and interest." ***Id.*** (internal quotation and emphasis omitted). Moreover, an act is committed wantonly and with bad motive "[i]f a defendant intentionally does a wrongful act, and knows at the time the act was wrongful." ***Claus v. Intrigue Hotels, LLC***, 328 S.W.3d 777, 783 (Mo. App. W.D. 2010) (internal quotation omitted) *overruled on other grounds by* ***Badahman***, 395 S.W.3d at 40.

The District contends that Respondent failed to make a submissible case for punitive damages because there was no clear and convincing evidence in the record of its evil motive, outrageous conduct, or reckless indifference to the rights of Respondent. However, a "plaintiff may . . . show the discriminatory conduct supporting punitive damages by circumstantial evidence." *Holmes*, 364 S.W.3d at 629. Thus, Respondent's "evidence in support of her MHRA claim may also meet her burden for submitting punitive damages to the jury." *Id.*

As previously explained, a juror could reasonably infer that the District had ulterior motives in eliminating the SPE position, as the reasons for reconstituting the SPE position never came to fruition. Moreover, McNellis, who was involved in the decision to reconstitute the SPE position, made comments that discouraged the helping of older SPEs. And as a result of the interviewing process, which McNellis also participated in, the four eldest SPEs were not hired. Additional evidence indicated that Respondent had received positive reviews on her previous assessments. Yet, those assessments were not considered when the District made its hiring decisions. Instead, the District relied solely on Respondent's interview, during which she was scored lower than younger applicants despite the fact that she gave the same or better answers. From such evidence, the jury determined that age was a contributing factor in the District's decision to eliminate Respondent's SPE position or its failure to hire Respondent as an ED. Thus, it follows that, viewed in the light most favorable to submissibility, the evidence indicates the District's culpable mental state in that it acted with intentional disregard for Respondent's rights when it decided, because of her age,

22

to reconstitute the SPE position and not to hire her as an ED. Accordingly, Respondent made a submissible case for punitive damages, and the trial court did not err in denying the District's motion for JNOV with respect to that issue. Point denied.

In its sixth point, the District avers that the trial court abused its discretion by admitting the testimony of Thomas Levin because Levin's testimony was irrelevant to Respondent's discrimination claims, had no probative value, and was unfairly prejudicial. "Generally, a trial court has considerable discretion in admitting or excluding evidence." *St. Louis Cnty. v. River Bend Estates Homeowners' Ass'n*, 408 S.W.3d 116, 123 (Mo. banc 2013). We "give deference to the trial court's evidentiary rulings and will reverse the trial court's decision about the admission or exclusion of evidence only if the trial court clearly abused its discretion." *Id.* "When reviewing for an 'abuse of discretion,' this Court presumes the trial court's ruling is correct and reverses only when the ruling is clearly against the logic of the circumstances, is arbitrary and unreasonable, and indicates a lack of careful consideration." *Id.* (internal quotation omitted). "Upon finding an abuse of discretion, this court will reverse only if the prejudice resulting from the improper admission of evidence is outcome-determinative." *Williams v. Trans States Airlines*, 281 S.W.3d 854, 872 (Mo. App. E.D. 2009).

Evidence must be both logically and legally relevant in order to be admissible. *Claus*, 328 S.W.3d at 786. "Evidence is logically relevant if it tends to make any fact at issue more or less probable or tends to corroborate other relevant evidence." *Id.* at 786-87 (internal quotation omitted). "To be legally relevant, the probative value of the evidence must outweigh the dangers of unfair prejudice, confusion of the issues,

23

misleading the jury, undue delay, waste of time or needless presentation of cumulative evidence." *Kline v. City of Kansas City*, 334 S.W.3d 632, 643 (Mo. App. W.D. 2011) (internal quotation omitted).

The District contends that Levin's testimony was inadmissible because it constituted improper "me too" evidence in that Levin also had an age discrimination suit pending against the District. In support of its argument, the District cites to several federal cases that have either upheld the trial court's exclusion of evidence of other discrimination complaints against the defendant, *see McPheeters v. Black & Veatch Corp.*, 427 F.3d 1095, 1102 (8th Cir. 2005); *Kline v. City of Kan. City*, 175 F.3d 660, 668 (8th Cir. 1999); *Callanan v. Runyan*, 75 F.3d 1293, 1298 (8th Cir. 1996), or found such evidence to be inadmissible. *See Schrand v. Fed. Pac. Elec. Co.*, 851 F.2d 152, 156 (6th Cir. 1988); *Haskell v. Kaman Corp.*, 743 F.2d 113, 121-22 (2d Cir. 1994). Those cases, however, determined the admissibility of such "me too" evidence based upon the particular facts and circumstances of each case. Thus, there is no blanket exclusion in discrimination cases of evidence regarding other complaints of discrimination made against the defendant. Rather, the relevancy of such evidence must be reviewed on a case-by-case basis. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387, 128 S. Ct. 1140, 1147 (2008).

Furthermore, even if we were to assume, *arguendo*, that Levin's testimony was improperly admitted in this case, the District has failed to establish how it was prejudiced by his testimony. The District contends that Levin's testimony "creat[ed] the unfair prejudicial impression that because he claimed [the District] failed to hire him as a

principal based on his age, Respondent's claims that she was not hired for the ED position based on age discrimination were more likely to be true." However, the majority of Levin's testimony pertained to the process of how he, like Respondent, was not guaranteed a position with the District for the 2010-2011 school year and had to go through an interview process. Levin further testified about his interactions with Dr. Hernandez and how she was assigned to give him a performance evaluation. The only testimony regarding Levin's age discrimination suit occurred at the conclusion of his direct examination. In testifying about the suit, Levin simply answered affirmatively that he had filed an age discrimination claim against the District that was currently pending.[8] Under such circumstances, we cannot say that any perceived prejudice resulting from Levin's testimony was outcome-determinative. Point denied.

In its seventh point, the District contends that the trial court erred in denying its motion for new trial in that the trial court abused its discretion by admitting the Draft transformation plan into evidence. The District avers the Draft was inadmissible in that it lacked foundation, had no probative value, and was highly prejudicial. Again, we afford great deference to the trial court's evidentiary rulings regarding the exclusion and admittance of evidence. *River Bend Estates*, 408 S.W.3d at 123. Thus, even "[u]pon finding an abuse of discretion, this court will reverse only if the prejudice resulting from the improper admission of evidence is outcome-determinative." *Williams*, 281 S.W.3d at 872.

---

[8] The District did not object to such testimony at trial.

25

The District contends that the admission of the Draft was highly prejudicial because Respondent was permitted to attribute the allegedly age-insensitive remarks on page 66 to the District without any evidence that the District was responsible for those statements. However, the record reflects that the jury was clearly informed as to the community's participation in the drafting process. Prior to Levin's testimony regarding the language on page 66, the following stipulation was read to the jury:

> Exhibit 156 is a draft of the District's transformation plan to which both District employees and community members have the opportunity to contribute. It is not the final transformation plan in the form approved and adopted by the Board of Education.

On cross-examination, Levin testified that the community was involved in the drafting process and that he did not know who came up with the language that appeared on page 66. The final version of the transformation plan ultimately adopted and approved by the District was later admitted into evidence, and it was made clear to the jury that the adopted version did not include the allegedly inappropriate age-related remarks that appeared on page 66 of the Draft. Accordingly, even assuming *arguendo* that it was error to admit the draft, and further that the District could have been prejudiced by the draft's admission, any such prejudice was negated by the stipulation and the subsequent testimony. Thus, the trial court did not err in denying the District's motion for new trial. Point denied.

In its eighth point, the District asserts that the trial court erred in granting Respondent's motion for the equitable relief of reinstatement. The District concedes that such equitable relief is available under the MHRA. *See* **§ 213.111**. Nevertheless, it

26

asserts that awarding reinstatement in this case constituted an abuse of discretion because Respondent turned down the fifth-grade teaching position it offered her for the 2010-2011 school year. The District, however, fails to cite any legal authority for its contention. Furthermore, "[r]einstatement is the preferred remedy for unlawful employment discrimination." *Brady v. Curators of Univ. of Mo.*, 213 S.W.3d 101, 113 (Mo. App. E.D. 2006); *see also* *Gilliland v. Mo. Athletic Club*, 273 S.W.3d 516, 524 (Mo. banc 2009). Accordingly, the trial court did not abuse its discretion in granting Respondent's request for reinstatement. Point denied.

Finally, Respondent has filed a motion in this Court for attorneys' fees and costs on appeal. Pursuant to § 213.111.2, a court "may award court costs and reasonable attorney fees to the prevailing party." "A prevailing party is one that succeeds on any significant issue in the litigation which achieved some of the benefit the parties sought in bringing suit." *Holmes*, 364 S.W.3d at 631 (internal quotation omitted). "Where a plaintiff has prevailed in an action under the MHRA, the court should award attorneys' fees unless special circumstances would render such an award unjust." *McCrainey v. Kansas City Mo. Sch. Dist.*, 337 S.W.3d 746, 756 (Mo. App. W.D. 2011) (internal quotation omitted). Here, because we are affirming the judgment in favor of Respondent, Respondent is the prevailing party. Therefore, Respondent's motion for costs and attorneys' fees on appeal is sustained. However, since the trial court is better equipped to hear evidence and argument on the issue of costs and attorneys' fees, we remand the case to the trial court for the purpose of conducting a hearing to determine

the reasonableness of the costs and fees requested, and to enter an appropriate award. *Id.*

Accordingly, the judgment is affirmed. Nevertheless, because we are granting Respondent's motion for costs and attorneys' fees, we remand the case to the trial court for further proceedings consistent with this opinion.

_____
Joseph M. Ellis, Judge

All concur.