

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| JANICE TURNER, | ) | |
| Respondent, | ) | |
| v. | ) | **WD78309** |
| | ) | |
| KANSAS CITY PUBLIC SCHOOLS, | ) | **FILED: April 5, 2016** |
| Appellant. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### THE HONORABLE JUSTINE E. DEL MURO, JUDGE

### BEFORE DIVISION TWO: MARK D. PFEIFFER, PRESIDING JUDGE,
### LISA WHITE HARDWICK AND JAMES E. WELSH, JUDGES

Kansas City Public Schools (KCPS) appeals from a judgment awarding actual and punitive damages to Janice Turner on her retaliation claim. KCPS contends Turner failed to present sufficient evidence to support her claims. For the reasons explained herein, we find no error and affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

Turner worked as a secretary at various KCPS schools from 1991 to 2012. When the 2010-2011 school year ended, Turner was furloughed from her secretarial position at Southwest High School. She filed a union grievance claiming wrongful termination because she had worked for KCPS longer than other

secretaries who were retained.  KCPS reinstated Turner to her position at Southwest after determining that her seniority had been miscalculated.

During the 2011-2012 school year, Turner began having difficulties with KCPS administrators even though she had never received discipline in her prior years of service.  On February 7, 2012, Turner filed a union grievance regarding her inability to obtain work supplies or coverage for lunch breaks and alleging that another secretary was being shown favoritism by KCPS.  In response, Southwest Vice Principal Derek Jordan established written lunch break times, created a staggered work schedule to ensure coverage for all breaks, and clarified the duties of each secretary in writing.

On April 15, 2012, after conditions at Southwest did not improve, Turner filed another union grievance alleging a "hostile work environment."  Three days later, Vice Principal Jordan issued Turner a "Letter of Reprimand."[1]  The letter alleged several incidents in which Turner had previously engaged in misconduct, including: (1) taking a prom dress from a student donation; (2) calling another secretary a "bitch;" (3) purchasing a cup of coffee for a student; and (4) stating loudly that she had "had enough of this and [was] leaving."

On May 2, 2012, Turner filed a charge with the Kansas City Human Relations Department (KCHRD) alleging that KCPS discriminated and retaliated

---

[1] As part of a collective bargaining agreement with the union, KCPS generally followed a "Progressive Discipline" policy, which included several steps of discipline: (1) verbal counseling; (2) "Letter of concern;" (3) "Letter of Reprimand;" (4) "Letter of Final Reprimand;" and (5) termination. Certain steps could be skipped based on the severity of the conduct involved.

against her for making complaints.[2] KCPS received notice of the discrimination charge on May 16. On May 24, Principal Edwin Richardson issued Turner a Letter of Final Reprimand, alleging that Turner had called a student "dangerous" in front of other students and a parent. The letter stated that it was Turner's "final warning" and that if the problems persisted, "termination will be recommended."

Turner did not work at Southwest at any time after the final reprimand. She was assigned to the summer school session for Wheatley Elementary School. While working at Wheatley, Turner experienced no problems and received no discipline. Wheatley Principal Bonita Benson praised Turner as "professional, welcoming, and helpful" and stated that she was "a hard worker and team player."

Within this same timeframe, KCPS administrators had discussions about terminating Turner. On June 13, 2012, Dynasti Hunt, a manager in the KCPS Human Resources (HR) Department, sent an email to Principal Richardson suggesting that they postpone a meeting scheduled for that day because "Turner has filed a pending EEOC claim against the district." Hunt explained that "before we complete termination, I would like to run her file through [the legal department]." The meeting was then postponed to June 28, 2012, at which time Hunt understood that Turner's employment was to be terminated. However, the termination did not occur, and the KCPS administration instead offered Turner "the option to transfer to another designated school location in lieu of termination, to be given a final opportunity to improve [her] performance."

_____

[2] Turner also dually filed the discrimination and retaliation charge with the Equal Employment Opportunity Commission (EEOC) and the Missouri Human Rights Commission (MHRC).

3

Turner was assigned to Knotts Elementary School for the 2012-2013 school year, under the supervision of Principal Yvette Hayes. Before Turner began her assignment, Hunt informed Principal Hayes of Turner's problems at Southwest. On August 24, 2012, Principal Hayes sent an email to Hunt alleging that Turner had transferred three students into a different class without approval. Hunt responded, "Quick question. Have you had any other issues with Ms. Turner?" Principal Hayes then responded that Turner was late to work that day and absent from work for one day the prior week.

KCPS issued Turner a termination letter on August 29, 2012. The letter referenced Turner's final reprimand letter and stated that "after this letter was administered, concerns regarding your failure to adhere to [KCPS's conduct] policy were raised." The letter stated that a termination decision was originally made on June 28, 2012, but Turner was nonetheless granted the transfer that she had requested "in connection with [her] discrimination charge" against KCPS. The letter explained that Turner was terminated because of "several concerns" regarding her work performance at Knotts.

On May 28, 2013, Turner filed suit under the Missouri Human Rights Act (MHRA) asserting that KCPS discriminated against her on the basis of age and terminated her in retaliation for the KCHRD discrimination charge. At trial, the jury ruled in KCPS's favor on the age discrimination claim but found KCPS liable for retaliation. The verdict awarded Turner $50,000 in compensatory damages and $37,500 in punitive damages. The circuit court subsequently denied KCPS's

4

motion for judgment notwithstanding the verdict (JNOV) and entered judgment in accordance with the jury award. The court also awarded Turner attorney's fees, costs, front pay, and ordered that she be reinstated. KCPS appeals.

## ANALYSIS

### *Retaliation Claim*

In Point I, KCPS contends the circuit court erred in denying its motion for JNOV because Turner failed to present substantial evidence to support her retaliation claim. To withstand a motion for JNOV, Turner was required to "make a submissible case by offering substantial evidence to support every fact essential to a finding of liability." *Hurst v. Kansas City, Missouri Sch. Dist.*, 437 S.W.3d 327, 336 (Mo. App. 2014) (citation omitted). We view the evidence in the light most favorable to the verdict, disregarding evidence to the contrary. *Id.* We will reverse the jury's verdict only where we find "a complete absence of probative facts to support the jury's conclusion." *Id.*

Under the MHRA, it is an unlawful discriminatory practice to retaliate "in any manner" against an employee who "has opposed any practice prohibited by this chapter" or "has filed a complaint . . . pursuant to this chapter." § 213.070(2), RSMo.[3] To make a submissible case on her retaliation claim, Turner was required to establish that: (1) KCPS terminated her employment, (2) her discrimination charge was a contributing factor in the termination, and (3) she sustained damages as a result of the conduct. *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d

[3] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2013 Cumulative Supplement.

5

854, 866 (Mo. App. 2009). KCPS challenges only the second element—whether Turner's discrimination charge was a "contributing factor" in her termination. A contributing factor is a condition "that contributes a share in anything or has a part in producing the effect." *McBryde v. Ritenour Sch. Dist.*, 207 S.W.3d 162, 170 (Mo. App. 2006) (citation omitted).

Cases involving claims of retaliatory motive "are inherently fact-based and often depend on inferences rather than on direct evidence." *Barekman v. City of Republic*, 232 S.W.3d 675, 682 (Mo. App. 2007) (citation omitted). Thus, Turner can rely on circumstantial evidence tending to support an inference of retaliatory motive, such as the proximity in time between Turner's discrimination charge and KCPS's decision to terminate her. *Id.* KCPS asserts that the "closest temporal relationship" was between Turner's May 2 discrimination charge and the May 24 final reprimand. KCPS argues that Hunt—who drafted Turner's termination letter—was unaware of the charge until after the reprimand letter had been issued. KCPS further notes that Turner was not fired until August—almost three months later. Thus, KCPS argues that because so much time elapsed between the discrimination charge and the actual firing of Turner, there is no reasonable inference that the charge was a contributing factor in the termination decision that was made in August 2012.[4]

---

[4] KCPS relies on federal cases which state that an inference of retaliatory motive "vanishes altogether when the time gap" between the charge and the termination "is measured in months." *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011). However, federal law is more stringent in discrimination cases. The temporal proximity in federal cases must be close enough to give rise to an inference that the protected activity was a "substantial or determining

6

KCPS's argument ignores probative facts in the record. The relevant consideration is whether Turner's discrimination charge contributed to the *decision* to fire her. *See Hurst*, 437 S.W.3d at 340. The evidence established that KCPS administrators discussed plans to terminate Turner in June 2012 after she had filed her discrimination charge. HR manager Dynasti Hunt sent Principal Richardson an email on June 13 stating that she was going to "run [Turner's] file through [the legal department]" before completing termination. Thus, KCPS had decided to terminate Turner less than a month after KCPS received notice of Turner's discrimination charge on May 16, 2012.

Importantly, KCPS had no credible explanation as to why the decision to terminate Turner in June was made in the first place. The May 24 letter of reprimand stated that it was Turner's "final warning" and that if the problems persisted, "termination will be recommended." The decision to terminate Turner, just over two weeks later, was purportedly based on Principal Richardson's "additional concerns" that were raised subsequent to the final warning being issued. However, Principal Richardson stated that he could not recall what those concerns were. Moreover, Turner did not work at Southwest at any time after May 24. Thus, she could not have engaged in further conduct for which Principal Richardson might have found grounds for termination. By contrast, the only other

factor" in causing the termination, not that it merely "contributed" to the termination. *See Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 819 (Mo. banc 2007). Moreover, the cases cited by KCPS suggest that very close temporal proximity is required when the success of plaintiff's retaliation claim rests *solely* on the timing of the decision. *See Tyler*, 628 F.3d at 986; *Carter v. CSL Plasma Inc.*, 63 F.Supp.3d 1034, 1047 (W.D. Mo. 2014).

evidence presented regarding that timeframe was that Turner was receiving praise for her summer school work at Wheatley and had not received any further discipline for misconduct. The jury could have reasonably inferred from this evidence that Turner's charge of discrimination was a contributing factor in KCPS's June 2012 decision to terminate her.

KCPS emphasizes, however, that the fact that it chose not to move forward with Turner's termination in June, and actually transferred her to another school, proves that her discrimination charge did not contribute to its decision to ultimately terminate her in August. Again, KCPS ignores the fact that no evidence was presented to explain why it had any reason—other than Turner's filing of a discrimination charge—to "move forward with" Turner's termination in June.

Another form of circumstantial evidence that is probative of retaliatory motive is "[p]roof that the defendant's [proffered] explanation is unworthy of credence." *Lomax v. DaimlerChrysler Corp.*, 243 S.W.3d 474, 483 (Mo. App. 2007) (citation omitted). Thus, the jury could have rejected KCPS's proffered reasons for terminating Turner and inferred from that disbelief that KCPS had a retaliatory motive. *Id.* KCPS claimed that it had fired Turner because of her poor performance at Knotts in August 2012. Specifically, KCPS alleged that Turner had missed work on August 17 and that she was late to work on August 24. However, Turner produced evidence that Principal Hayes had approved her timesheets which showed that Turner was actually at work on-time on both of the days alleged. KCPS also alleged that Turner had transferred three students into a

8

different class without Principal Hayes' authorization. By contrast, Turner testified that Principal Hayes had retroactively authorized Turner's actions in transferring the students. From this conflicting evidence, a reasonable juror could have found that KCPS's proffered explanation for terminating Turner was false and inferred discriminatory purpose on KCPS's behalf.

Upon reviewing the record in the light most favorable to Turner, we find there was sufficient competent evidence to support the jury's determination that Turner's charge of discrimination against KCPS was a contributing factor in KCPS's decision to terminate her. Accordingly, the circuit court properly denied the motion for JNOV. Point I is denied.

### *Punitive Damages*

In Point II, KCPS contends the circuit court erred in denying its motion for JNOV because Turner failed to make a submissible case for punitive damages. "Whether there is sufficient evidence for an award of punitive damages is a question of law." *Howard v. City of Kansas City*, 332 S.W.3d 772, 788 (Mo. banc 2011) (internal quotations omitted). Thus, we determine whether the evidence presented "was sufficient, as a matter of law, to submit the claim for punitive damages." *Hurst*, 437 S.W.3d at 341. We view the evidence and all reasonable inferences drawn therefrom in the light most favorable to submissibility. *Id.* "Only evidence that tends to support the submission should be considered." *Hoyt v. GE Capital Mortg. Servs., Inc.*, 193 S.W.3d 315, 323 (Mo. App. 2006).

9

"To make a submissible case for punitive damages, there must be clear and convincing proof of a defendant's culpable mental state." *Hurst*, 437 S.W.3d at 341 (citation omitted). Turner could establish KCPS's culpable mental state by showing either that KCPS committed "an intentional wanton, willful, and outrageous act without justification" or "acted with reckless disregard" to Turner's rights. *Id.* (citation omitted). An act is committed wantonly if the defendant knows at the time it engages in the wrongful act that the act was, in fact, wrongful. *Id.* Turner could also rely on circumstantial evidence to show KCPS's intentional discriminatory conduct. *Id.*

Our review of the record indicates that most of the evidence supporting Turner's claim for retaliation also supports her claim for punitive damages. *See Williams*, 281 S.W.3d at 870−71. There was clear evidence that those involved in the decision to terminate Turner were aware of her discrimination charge prior to her termination. As noted, the jury could have disbelieved KCPS's proffered reasons for terminating Turner in August 2012. Turner produced documentary proof that she was at work on the days which KCPS alleged she had missed, thus demonstrating that KCPS had no evidentiary basis for making those allegations. The jury could have "reasonably [inferred] from the falsity of the explanation that the employer [was] dissembling to cover up a discriminatory purpose." *Lomax*, 243 S.W.3d at 483 (citation omitted).

There is additional circumstantial evidence in the record to support the jury's finding that KCPS's retaliatory actions were in reckless disregard of Turner's rights.

10

On April 15, 2012, after Turner had filed a union grievance about her working conditions, Vice Principal Jordan sent an email to HR describing Turner and another secretary as "totally dysfunctional" and "total cancers" to KCPS's environment. Turner had never received any discipline as a KCPS employee before that email was sent. Further, KCPS claimed that it made the decision to transfer Turner in lieu of termination in order to give her a "fresh start." However, the jury could have rejected this explanation in light of emails revealing that the administration decided not to proceed with the planned termination in June 2012 only after consulting with the legal department about any possible "recourse of action" from firing Turner.

Turner introduced evidence showing that KCPS had policies in place that prohibited retaliation and elicited testimony from management that they knew it was unlawful to retaliate against an employee for filing a charge of discrimination. *See Ellison v. O'Reilly Auto. Stores, Inc.*, 463 S.W.3d 426, 435 (Mo. App. 2015) (upholding punitive damages award when defendant had policy prohibiting discrimination and management acknowledged at trial that discriminating on the basis of disability was illegal). When Principal Hayes emailed Hunt regarding Turner's alleged unauthorized transfer of students, Hunt responded, "Quick question. Have you had any other issues with Ms. Turner?" From this response, the jury could infer that Hunt was searching for pretextual reasons to justify Turner's termination.

11

The jury determined that Turner's discrimination charge was a contributing factor in KCPS's decision to terminate her. From that same evidence, the jury could have reasonably concluded that KCPS intentionally sought to conceal this contributing factor by alleging Turner's misconduct at her newly assigned school. *See Lomax*, 243 S.W.3d at 483 (noting that "rejection of the defendant's proffered reason will permit the trier of fact to infer the ultimate fact of intentional discrimination") (citation and emphasis omitted). Viewed in the light most favorable to submissibility, the evidence supports a finding that KCPS acted with intentional disregard for Turner's rights when it fired her because of her complaints of discrimination and retaliation. Accordingly, Turner made a submissible case for punitive damages and the circuit court did not err in denying KCPS's motion for JNOV. Point II is denied.

### Attorney's Fees on Appeal

As the prevailing party below, Turner has filed a motion for an award of her attorney's fees on appeal pursuant to Section 213.111.2 of the MHRA. Under this provision, "the court should award attorneys' fees unless special circumstances would render such an award unjust." *McCrainey v. Kansas City Mo. Sch. Dist.*, 337 S.W.3d 746, 756 (Mo. App. 2011) (citation and internal quotations omitted). This includes fees incurred on appeal from the circuit court's judgment. *Id.*

In the absence of any showing of special circumstances to render an award unjust, we grant Turner's motion for attorney's fees on appeal. Although appellate courts have "authority to allow and fix the amount of attorney's fees on appeal, we

12

exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." *Id.* (citation omitted). Accordingly, we remand to the trial court to determine the reasonableness of Turner's attorney's fees on appeal and enter an appropriate award. *Hurst*, 437 S.W.3d at 344.

## CONCLUSION

We affirm the circuit court's judgment and grant Turner's motion for attorney's fees on appeal. The cause is remanded to the circuit court for further determination of the attorney's fees award.

_____
LISA WHITE HARDWICK, JUDGE


ALL CONCUR.